```
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF FLORIDA

                                    CASE NO. 11-Cv-22865-HUCK
                                         (07-Cr-20839-HUCK)
                                    MAGISTRATE JUDGE P. A. WHITE
GUILLERMO ALFONZO ZARABOZO,:

    Movant,                   :            REPORT OF
                                        MAGISTRATE JUDGE
v.                            :

UNITED STATES OF AMERICA,     :

    Respondent.               :
_____
```

## I. Introduction

This matter is before the Court on the movant's motion to vacate pursuant to United States Code Title 28, Section 2255, attacking his sentence for maritime offenses and murders following a jury trial in criminal case number 07-cr-20839-HUCK.

The Court has reviewed the motion to vacate and amended motions, the Government's responses, and all pertinent portions of the underlying criminal file.

## II. Claims

Construing the *pro se* movant's arguments liberally, he appears to raise the following claim in his Section 2255 motion and first amended motion:

1. Trial counsel was ineffective for failing to move to suppress the search of Zarabozo's computer.

(Civ-DE# 1, 5).

In his second amended motion, Zarabozo additionally argues

(renumbered):

    2. Counsel was ineffective for failing to move to suppress Zarabozo's arrest by Coast Guard personnel acting outside their authority;
    3. Counsel was ineffective for failing to move to dismiss the case for lack of subject-matter jurisdiction under 18 U.S.C. § 2280; and
    4. Appellate counsel failed to raise Claims (2) and (3) due to a conflict of interest.

(Cv-DE# 18).

### III. Procedural History

The relevant procedural history of the underlying criminal case is as follows. Zarabozo and a co-defendant were charged with: Count (1), conspiracy to commit violence against maritime navigation (18 U.S.C. §§ 2280(a)(1)(A), (a)(1)(H), (b)(1)); Count (2), seizing exercising control over a ship by force, threat, and intimidation (18 U.S.C. §§ 2280(a)(1)(A), (b)(1), and (2)); Count (3), performing an act of violence likely to endanger the safe navigation of a ship (18 U.S.C. §§ 2280(a)(1)(B), (b)(1), and (2)); Counts (4)-(7), first-degree murder (18 U.S.C. § 1111(a), 7, and 2); Counts (8)-(11), kidnaping (18 U.S.C. § 1201(a)(2), 7, and 2); Count (12), robbery (18 U.S.C. § 2111, 7 and 2); and Counts (13)-(16), causing death through the use of a firearm in the course of violating Section 924(c) (18 U.S.C. § 924(j)(1)). (Cr-DE# 85).

Defense counsel filed several motions to suppress on Zarabozo's behalf. One of them addressed the evidence seized from Zarabozo's bedroom. (Cr-DE# 114). He argued FBI agents appeared at the apartment he shared with his mother, step-father and step-sister without a warrant. His mother was allegedly intimidated into allowing the agents to enter the apartment. Once inside, they followed her into the bedroom Zarabozo shared with his step-sister,

inspected several items, then obtained a warrant based on the items they saw in the bedroom. The Court held an evidentiary hearing on the motion at which the Government called an FBI agent, Herbert Hogberg, and the defense called Zarabozo's mother, Francisca Alfonso, and her husband, Osvaldo Ramirez. (Cr-DE# 445).

Agent Hogberg testified that he and another agent went to the apartment where Zarabozo lived to find out background information about him. (Cr-DE# 191 at 93). Alfonso let them into the apartment, provided Zarabozo's background and work history, and led them into the bedroom Zarabozo shared with his thirteen-year-old step-sister. Alfonso showed the agents the lockbox where Zarabozo kept his gun and opened it for them with the combination Zarabozo had shared with her. She did not place any restrictions on the agents' movements inside the bedroom, so Hogberg opened a cardboard box on top of Zarabozo's bed. The agents ended their examination of the room and obtained a search warrant after they discovered the lockbox did not contain a weapon, and found an ammunition box and police-style utility belt in the bedroom.

Hogberg's search warrant affidavit seeks to search Alfonso's entire residence including Zarabozo's bedroom, boxes and containers within his bedroom, and a computer Zarabozo used that was located in the apartment's livingroom. (Cr-DE# 114-1 at 4). Hogberg's affidavit states "ZARABOZO's mother showed agents a computer that ZARABOZO and his sister utilize. The computer is located in the living room of the apartment. ZARABOZO's mother has consented to the seizure of the computer." (Cr-DE# 114-1 at 7).

Alfonso testified at the suppression hearing that she had taken two pills for anxiety a few hours before the agents arrived, that she felt pressured to let them into the apartment, and that

she felt compelled to allow them to go into her son's bedroom. (Cr-DE# 191 at 118). Her husband, Ramirez, testified he spoke to his wife several times while the agents were inside the apartment and that she sounded very upset and distressed. (Cr-DE# 191 at 142).

After considering the testimony and the parties' arguments, the Court found Agent Hogberg to be credible and denied the motion to suppress:

> THE COURT: ... We had three witnesses. We had the Government's witnesses, the FBI agent, Herbert Hogberg, and Mr. Zarabozo offered two witnesses, his mother Mrs. Alfonso and his stepfather Mr. Ramirez.
> I think what I have here rather than a real true dispute as to what actually happened is a different perspective or point of view or interpretation of what occurred, or spin.
> Where there are these disputes or interpretations as to what happened, as to exactly was said, as to exactly what was done, I found that **Agent Hogberg's testimony was very, very credible**.
> ...
> **I find that where Agent Hogberg's testimony was different than Mrs. Alfonso's or Mr. Ramirez's, that he was by far the most credible witness in this case and I accept his version as to what occurred on that day in the apartment.**
> I should say this because I think it's appropriate to say, I don't find that Mrs. Alfonso was deliberately attempting to mislead the Court at all. I think she was trying to testify as best she could, as best she felt the facts were.
> I think her interpretation was colored by the fact that she's Mr. Zarabozo's mother....
> **There's no objective evidence that I see that she was in any way incapacitated or incapable of freely and voluntarily giving access to her apartment and the room that Mr. Zarabozo shared with his step sister.**
> And of course answering the questions that led to her suggestion that they look in the bedroom as well. There hasn't been any suggestion that the medication incapacitated her. The indication is she takes this medication to control her anxiety and depression. Her

4

husband said it was to control or for the angina or rapid heart beat. It's clear that it was for the purpose of relieving anxiety. There's no suggestion that it effected her ability to understand what was going on.

...

**[T]he Government has argued that Mrs. Alfonso has actual authority and gave consent to search and that consent was valid. I agree with that.**

**As the head of household under the circumstances we have here under which Mr. Zarabozo resided with his mother, who possessed the right and authority over the apartment, including the bedroom occupied by not only Mr. Zarabozo, but also his younger step sister**.

The agents – she did have the actual authority to let the agents go in there and the agents obtained the valid third party consent to conduct the search, including the contents of the lockbox, the cardboard box, and whatever else was in the bedroom because there was no limitation placed on the invitation by Mrs. Alfonso.

...

**At the very least she had joint and common authority with Mr. Zarabozo to go into his room under the circumstance we have here, that whole apartment, including the bedroom being shared by her two children. She had the ability because of that to give valid consent to search, so this not a violation of his Fourth Amendment rights**.

...

While I find there was actual authority, I concur that if there were not actual authority **there was at least apparent authority for the mother to take the agents into the bedroom and to open the lockbox and give them complete access to all that was there to be seen and looked at.**

...

**Finally, I see no actual basis to find that Mrs. Alfonso's consent was in any way coerced or obtained by trickery or as a result of any form of incapacitation or duress. The evidence is completely to the contrary**. Her consent was not only **freely and voluntarily given**, but given as a result of an effort to help her son by showing these agents who came to talk to her, who did not come with the intent to search, but to find out who Mr. Zarabozo was by his family members.

It was her attempt to show that her son was a good son and was not capable of doing the things alleged in the indictment and that they had nothing to hide from the

>       FBI.
>       ...
>       **It's my finding that she voluntarily led the agents to the bedroom, opened the lockbox, and allowed them to have access to all the contents of the room in which her son slept. She never put any limitations on what they could look at.**
>       She did not try to attempt to prevent the agents from looking at anything in the bedroom. I am going to deny the motion for that reason....

(Cr-DE# 445 at 38-43) (emphasis added).

Zarabozo proceeded to trial but the jury failed to reach a verdict on all counts and he was granted a new trial on the remaining counts. (Cr-DE# 308, 328). He was ultimately convicted of Counts (1)-(12) as charged and guilty of the lesser offenses in Counts (13)-(16). (Cr-DE# 404). The Court adjudicated him guilty and sentenced him to life plus eighty-five years followed by five years of supervised release. (Cr-DE# 419).

On appeal, Zarabozo challenged the denial of his motion to suppress evidence taken from his bedroom as well as a motion to suppress items from a bag on the life raft where he and the co-defendant were discovered by the Coast Guard. The Eleventh Circuit affirmed on May 10, 2010. (Cr-DE# 453) (09-12371). It noted that Zarabozo's attempt to attack the search of his computer was improperly raised for the first time in a reply brief and would not be addressed on the merits:

>       Zarabozo attempts to appeal, for the first time in his reply brief, the admission of evidence extracted from his living room computer. Zarabozo's initial motion to suppress, filed in district court, challenged only the validity of Zarabozo's mother's consent to law enforcement's search of Zarabozo's bedroom. Although the motion briefly noted that Zarabozo's mother consented to the search of the living room computer, the motion did

6

> not contend that Zarabozo's mother lacked the authority to consent to the computer search. Zarabozo's initial appellate brief states the computer was located in his bedroom and makes arguments dealing solely with the validity of his mother's consent to search the bedroom. Zarabozo concedes in his reply brief that the computer was taken from the living room but contends that its contents should still have been suppressed. He then provides, for the first time, arguments regarding his mother's authority to consent to a computer search. We do not consider issues raised for the first time in a reply brief. See United States v. Smith, 416 F.3d 1350, 1352 n.1 (11th Cir. 2005).

(DE# 453 at 5, n.1).

Zarabozo filed the initial motion to vacate on August 4, 2011, which appears to be signed by his mother under power of attorney. The first amended motion, dated August 3, 2011, appears to be a duplicate signed by Zarabozo. The second amended motion raising Claims (2)-(4) was filed November 18, 2011.

## IV. Statute of Limitations

The Government does not contest the timeliness of Zarabozo's initial and first amended motions to vacate. However, it argues the second amended motion raising Claims (2)-(4) is time-barred and does not relate back to the original motion.

As a general matter, AEDPA's one-year time limit begins running once the defendant exhausts or foregoes his opportunity to pursue direct appeal. Clay v. United States, 537 U.S. 522 (2003). Where a defendant has not filed a notice of appeal, this is fourteen days after the final judgment is entered. Fed. R. App. P. 4(b)(1)(A) (14 days after final judgment is entered to file notice of appeal).

Relation back allows an untimely claim to be considered timely

7

by treating it as though it was filed when the timely claims were filed. Davenport v. United States, 217 F.3d 1341 (11th Cir. 2000); Fed. R. Civ. P. 15(c)(2). To relate back, the new claims must arise out of the conduct, transaction, or occurrence set forth in the initial motion. Id. If the original and amended petitions state claims that are "tied to a common core of operative facts, relation back will be in order." Mayle v. Felix, 545 U.S. 644, 664 (2005). However, "[a]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in time and type from those in the original pleading set forth." See Mayle, 545 U.S. at 650; Davenport, 217 F.3d at 1341 (holding that untimely amendment including only entirely new claims could not relate back to original timely petition).

Zarabozo's conviction and sentence became final on August 9, 2010, ninety days after the Eleventh Circuit issued its judgment within which Zarabozo could have petitioned for a writ of certiorari. Clay, 537 U.S. at 532 ("We hold that, for federal criminal defendants who do not file a petition for certiorari with this Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires."); Kaufmann v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002) ("[E]ven when a prisoner does not petition for certiorari, his conviction does not become 'final' for purposes of § 2255(1) until the expiration of the 90-day period for seeking certiorari."); Close v. United States, 336 F.3d 1283 (11th Cir. 2003) (time to seek certiorari review runs from date of judgment, not mandate). His original and first amended motions to vacate were timely filed just within AEDPA's one-year statute of limitations.

Zarabozo's second amended motion to vacate was filed more than

three months late on November 18, 2011. The question then becomes whether the second amended motion relates back to the timely-filed motions. The original and first amended motions raise a single claim, (1) that trial counsel was ineffective for failing to move to suppress the search of Zarabozo's computer. In his second amended motion, however, Zarabozo raises three entirely new claims: (2) counsel was ineffective for failing to move to suppress Zarabozo's arrest by Coast Guard personnel acting outside their authority; (3) counsel was ineffective for failing to move to dismiss the case for lack of subject-matter jurisdiction under 18 U.S.C. § 2280; and (4) appellate counsel failed to raise Claims (2) and (3) due to a conflict of interest. Claim (2) is similar to the timely-filed Claim (1) in that it addresses ineffective assistance of counsel with regards to a motion to suppress, However, Claim (2) does not relate back to Claim (1) because it addresses a motion to suppress that was filed and heard on a separate date, and was factually unrelated to, the motion to suppress addressed in Claim (1). See (Cr-DE# 135, 207, 279). Claim (3) raises a completely new claim that counsel was ineffective for failing to move to dismiss the case for lack of subject-matter jurisdiction, and Claim (4) alleges, for the first time, ineffective assistance of appellate counsel.

Claims (2)-(4) differ in fact, time and type from Zarabozo's timely claim and therefore do not relate back to his timely motion to vacate and first amended motion. See, e.g., Tucker v. Sec'y, Dep't of Corr., 2009 WL 890395 (M.D. Fla. March 31, 2009) (claims that trial counsel was ineffective in regards to certain evidentiary issues did not relate back to original claims of trial court error); Romanes v. Sec'y, Dep't of Corr., 621 F.Supp.2d 1249, 1266 (M.D. Fla. 2008) (supplemental claim of ineffective assistance of appellate counsel was distinct from claims of trial court error

and ineffective assistance of trial counsel raised in the original petition, and did not relate back); Johnson v. Watson, 2005 WL 1126664 (M.D. Fla. May 5, 2005) (no relation back where the original petition asserted claims of double jeopardy and sufficiency of the evidence, and amended petition alleged trial counsel was ineffective for failing to raise the double jeopardy issue and other ineffective assistance claims).

Accordingly, Claim (1) was timely filed and will be addressed on the merits. Claims (2)-(4) should be dismissed with prejudice as time-barred.

## V. Standard of Review

Section 2255 authorizes a prisoner to move a sentencing court to vacate, set aside, or correct a sentence where "the sentence was imposed in violation of the Constitution or laws of the United States, or ... the court was without jurisdiction to impose such sentence, or ... the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a); see Hill v. United States, 368 U.S. 424, 426-27 (1962). A sentence is otherwise subject to collateral attack if there is an error constituting a "fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979); Hill, 368 U.S. at 428.

To prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v.

Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(*en banc*).

## VI. Discussion

(1) Ineffective Assistance: Motion to Suppress Computer

Zarabozo contends trial counsel was ineffective for failing to move to suppress the computer that was seized from the apartment he shared with his family. Zarabozo does not contest the fact that his mother consented to the computer's seizure. See (Cv-DE# 1 at 17) ("after my mother told the agents they could seize my computer, the agents were able to name my computer by serial number ... in the search warrant."). However, he argues she lacked authority to consent for various reasons, and also argues there was no probable cause for the agents to request the computer in their search warrant.

Specifically, he claims: (a) his mother lacked apparent or actual authority to allow agents into the apartment and, had they not entered, they would not have known Zarabozo used a computer and would not have know the serial number to include in the search warrant; (b) his mother did not have joint access or mutual use of computer and accordingly had no authority to consent to its search; (c) even if his mother had authority to consent to a search of the apartment, she did not have authority to consent to search Zarabozo's personal private computer which is entitled to heightened privacy protection; and (d) there was no probable cause for agents to request the computer in their search warrant. Zarabozo argues counsel's failure to pursue suppression of the computer prejudiced him because information gleaned from the computer destroyed his credibility at trial and ruined the defense strategy, resulting in his conviction. Each sub-claim will be addressed in turn.

(a) <u>Apparent and Actual Authority</u>

First, Zarabozo claims that his mother lacked apparent or actual authority to allow agents into the apartment and, if they had not entered, they would not have known Zarabozo used a computer and would not have know the serial number to include in the search warrant.

A search is permissible if an officer obtains voluntary consent of the person whose property is searched or of a third party who possessed common authority over the premises. <u>Illinois v. Rodriguez</u>, 497 U.S. 177 (1990). A third party who has "common authority over or other sufficient relationship to the premises or effects sought to be inspected" may give valid consent to search an area. <u>United States v. Matlock</u>, 415 U.S. 164, 171 (1974).

Zarabozo's suggestion that his mother lacked the authority to allow agents inside the family's apartment has already been decided adversely to Zarabozo on direct appeal and need not be reconsidered here. See <u>United States v. Nyhuis</u>, 211 F.3d 1340 (11th Cir. 2000) (district court is not required to reconsider on Section 2255 review errors that were previously raised and decided on direct appeal); <u>United States v. Frady</u>, 456 U.S. 152, 167-69 (1982) (issues are not cognizable on a Section 2255 motion if they were raised and considered on direct appeal absent a showing of changed circumstances). Because the agents were legally inside the apartment and spoke to Zarabozo's mother voluntarily, the computer they saw inside the apartment's livingroom was not the fruit of any illegality and was not subject to suppression.

(b) <u>Joint Access and Mutual Use</u>
Zarabozo contends his mother did not have joint access or mutual use of the computer and accordingly she had no authority to

consent to its search or seizure.

A third party's consent is valid is he has mutual use of the property with joint access to or control of the area for most purposes. Matlock, 415 U.S. at 171; United States v. Harris, 526 F.3d 1334, 1339 (11th Cir. 2008). Even if the consenting party does not in fact have the requisite relationship to the premises, if the officer has an objectively reasonable, though mistaken, good-faith belief that the consent was a valid consent, there is no Fourth Amendment violation. Illinois v. Rodriguez, 497 U.S. 177, 186 (1990).

The Court determined following an evidentiary hearing that Zarabozo's mother had actual and apparent authority to consent to agents' entry into the apartment and search of Zarabozo's bedroom as well as his belongings inside the bedroom. Zarabozo's mother testified she had a very close and open relationship with her son to the extent that she opened his mail and knew his lockbox combination. The broad scope of Zarabozo's mother's authority and control over his bedroom and personal effects would have led a reasonable officer to believe she also had the authority to consent to the search and seizure of a shared computer located in the apartment's common livingroom. See Matlock, 415 U.S. at 172 n.7 ("Common authority ... rests ... on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."). There is no reasonable probability the Court would have found Zarabozo's mother lacked authority over the shared computer located in the apartment's livingroom when it already rejected these arguments

with regards to items in Zarabozo's bedroom, which were arguably more private than the computer.

(c) <u>Heightened Privacy</u>

Zarabozo contends that, even if his mother had authority to consent to a search of the apartment, she did not have authority to consent to search his personal private computer which is entitled to heightened privacy protection.

The Fourth Amendment's prohibition against unreasonable searches and seizures "protects an individual in those places where [he] can demonstrate a reasonable expectation of privacy against government intrusion," and "only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search." <u>United States v. Cooper</u>, 203 F.3d 1279, 1283-84 (11th Cir. 2000). "The party alleging an unconstitutional search must establish both a subjective and an objective expectation of privacy. The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable." <u>United States v. Segura-Baltazar</u>, 448 F.3d 1281, 1286 (11th Cir. 2006). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." <u>Katz v. United States</u>, 389 U.S. 347, 351 (1967).

Zarabozo has failed to demonstrate he had an expectation of privacy in the computer. He alleges his mother did not have an ownership interest in the computer and that she did not use the computer. He does not, however, contest the fact that the computer was located in the family apartment's commonly shared livingroom and that his step-sister also used the computer. Nor does he assert

14

the computer was password protected or that any other security measures were in place that prevented its use by the home's other occupants.[1] He had no reasonable expectation of privacy in the computer in the family's livingroom which he knew was shared with at least one other person under these circumstances. See generally, Katz, 389 U.S. at 351; United States v. King, 509 F.3d 1338, 1341 (11th Cir. 2007)(civil contractor's expectation of privacy for computer files that were shared on military base network was not reasonable); United States v. Vallimont, 378 Fed. Appx. 972 (11th Cir. 2010) (defendant frustrated his expectation of privacy by revealing the contents of his computer to a child and giving her free access to its contents).

(d) Probable Cause

Zarabozo contends there was no probable cause for agents to request the computer in their search warrant.

The Fourth Amendment requires that search warrants be issued only "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and persons or things to be seized." U.S. Const. Amend. IV. Probable cause exists when the totality of the circumstances evince a fair probability of discovering contraband. United States v. Anton, 546 F.3d 1355, 1385 (11th Cir. 2008). However, a search conducted pursuant to consent is a recognized exception to the requirements of probable cause and a search warrant. See Katz, 389 U.S. at 357 (search with consent is one of the "specifically established and well-delineated" exceptions to the warrant requirement); United States v. Harris,

---

[1] The parties are reminded that they must take before a magistrate "not only their best shot but all of the shots" and cannot raise new issues for the first time in objections to a Report. Starks v. United States, 2010 WL 4192875 at *3 (S.D. Fla. Oct. 19, 2010)(quoting Borden v. Sec'y, Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987)).

928 F.2d 1113, 1117 (11th Cir. 1991) (same).

Zarabozo does not contest the fact that his mother consented to the computer's seizure. The Court found following a suppression hearing that Zarabozo's mother voluntarily admitted the agents into the apartment and willingly allowed them to search Zarabozo's bedroom and possessions. There is no reasonable probability that the Court would have found her consent with regards to the computer was any less valid than her consents to the agents' entry into the apartment or to the agents' search of Zarabozo's bedroom and belongings. Zarabozo's mother's valid consent to the agents' seizure of the computer rendered probable cause and a warrant unnecessary. Therefore, counsel was not deficient for failing to seek the computer's suppression based on a lack of probable cause.

Based on the foregoing, no meritorious grounds for seeking suppression with regards to the computer existed. Counsel cannot be deemed ineffective for failing to file a meritless motion to suppress. See Knowles v. Mirzayance, 556 U.S. 111, 126 (2009)(defense counsel not required to pursue every claim or defense, regardless of its merit, viability or realistic chance for success).

To the extent Zarabozo contends appellate counsel was ineffective for failing to properly raise this issue on direct appeal, (Cv-DE# 1 at 4), this claim, too, lacks merit because no evidentiary error occurred that would have been meritorious if raised on appeal. See Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious appellate issue).

## VII. Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2).""Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2255, Rule 11(a). A timely notice of appeal must still be filed even if the court issues a certificate of appealability. 28 U.S.C. § 2255, Rule 11(b).

After review of the record, the undersigned finds no substantial showing of the denial of a constitutional right as to movant's claims. See 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (habeas petitioner must demonstrate reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues were adequate to deserve encouragement to proceed further). Therefore, it is recommended that the Court deny a certificate of appealability in its final order. If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the District Judge in objections to this report and recommendation.

## VIII. Conclusion

Based on the foregoing, it is recommended that the motion to vacate be denied as to Claim (1), dismissed with prejudice as to Claims (2)-(4), that a certificate of appealability not be issued, and this case be closed.

Objections to this report, including any objection with

regards to the recommendation regarding the certificate of appealability, may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 4th day of April, 2012.

                                          UNITED STATES MAGISTRATE JUDGE

cc:   Guillermo Alfonzo Zarabozo, *pro se*
      Reg. No. 79076-004
      Coleman II - USP
      United States Penitentiary
      Inmate Mail/Parcels
      Post Office Box 1034
      Coleman, FL 33521

      Karen E. Gilbert
      United States Attorney's Office
      99 NE 4 St.
      Miami, FL 33132

      Anne Ruth Schultz
      United States Attorney's Office
      99 NE 4 St.
      Miami, FL 33132